UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIM. NO. 4:24CR40030-005 |
| v. | ) | |
| | ) | |
| HELBERT COSTA GENEROSO | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SENTENCING MEMORANDUM**

**INTRODUCTION**

Helbert Costa Generoso is a forty-year-old man who came to this country in 2016 on a tourist visa from Brazil.  He entered the United States lawfully, however, that visa has since expired. According to U.S. Probation, per ICE records, Mr. Generoso is now considered illegally in the United States and is subject to removal proceedings. Since his arrival to the U.S. Mr. Generoso has maintained steady employment, supported his biological daughter who resides in Brazil, his 13-year-old stepdaughter who resides with him, and his common law wife of five years. In this memo, Mr. Generoso hereby requests this Court sentence him to time served with a period of supervised release, which is a sentence sufficient but not greater than necessary to achieve the goals of sentencing pursuant to 18 U.S.C. 3553(a) and would permit him to maintain employment and support his family.

**FACTUAL BACKGROUND/OFFENSE CONDUCT[1]**

On June 24, 2025, Mr. Generoso pled guilty to two counts of a four-count Indictment. Count 1 charged Conspiracy to Unlawfully Produce and Possess with Intent to Transfer Identification

---

[1] Most of the offense conduct this section is repeated verbatim from the PSR dated 9/11/2025.  For purposes of this memorandum, the relevant conduct of Mr. Generoso is specifically included and summarized in this section.

1

Documents, in violation of 18 U.S.C. § 371 and Count 4 charged Furnishing a False Passport to Another for Use, in violation of 18 U.S.C. § 1543.

In summary, Mr. Generoso plead guilty to conspiring with the four codefendants and others to fraudulently obtain driver's licenses for undocumented immigrants who resided in states that did not allow for the issuance of licenses to them because they were not lawfully in the United States. PSR 8 Codefendant, Edvan Fernando Alves de Andrade was identified as the leader of this conspiracy. PSR 9  It would appear from the offense conduct that Mr. Generoso's role in this conspiracy was arguably limited compared to that of Mr. de Andrade and the other codefendants.

U.S. Probation summarized correctly the offense conduct that led to the instant charges.  Prior to 2023, as early as November 2020, the co-conspirators, led by Edvan de Andrade, fraudulently applied for NY licenses on behalf of more than 1,000 customers, and fraudulently obtained New York driver's license for more than 600 of those customers. The vast majority of those customers were Massachusetts residents using fraudulent New York licenses to operate motor vehicles. PSR 10  After July 2023, the co-conspirators broadened their conspiracy to include obtaining Massachusetts driver's licenses for undocumented immigrants residing in states outside of Massachusetts that restricted undocumented immigrants from obtaining in-state driver's licenses.  PSR 11

In June 2024, Mr. Generoso's involvement in the instant matter was revealed to law enforcement.[2] PSR 20  Prior to that date, codefendants, Edvan de Andrade and Gabriel De Andrade were identified as being involved in this matter.  PSR 11-19

---

[2] Additionally, according to the statement of offense conduct, Agents obtained financial records showing payments between GENEROSO and codefendants Edvan de Andrade, Gabriel de Andrade and Martin Reis during the conspiracy specifically, between at least approximately April 2019 and April 2022. However, the dates, frequency of and amounts of these payments was not specified.  PSR 26

In June 2024, an undercover HSI agent, posing as the customer, texted with Gabriel de Andrade about needing a form of identification in support of the license application in Massachusetts. Gabriel de Andrade responded with a phone number, xxx-xxx-1476, and messaged "send a message to his number, he is the one who makes passports and driver's licenses.  You can arrange everything directly with him." This phone number xxx-xxx-1476 belonged to Mr. Generoso.  PSR 20  At the time, Mr. Generoso was also advertising on WhatsApp under his first name Helbert.  PSR 21

On or about June 25, 2024, an undercover agent contacted Mr. Generoso on the cell phone of xxx-xxx-1476, asking to obtain a passport, and Mr. Generoso responded that a passport would cost $1,400, paid in two installments - $700 to order the passport, $700 when it arrived. Mr. Generoso said that he could acquire a passport from one of several countries, including Brazil, Spain, Portugal, France, Belgium, Germany or the Netherlands. GENEROSO said that the passports would be genuine but not registered with the respective countries. PSR 22

In order to receive payment of cash from the agent, Mr. Generoso provided the agent with an image of a dropped pin on a map, which went to Mr. Generoso's home at Address 1 in Danbury, and told the agent that this was the location of his house. PSR 23

The undercover agent requested a Brazilian passport and agreed to pay Mr. Generoso in return. On July 8, 2024, an undercover agent who was fluent in Portuguese, met with a person in Boston, Massachusetts, who was acting on GENEROSO behalf, and paid the first installment of $700. Mr. Generoso then arranged for the fake passport to be mailed from an address in Brazil, to Mr. Generoso's home in Danbury, CT. When the passport was in route, the undercover agent met with Mr. Generoso at his home on August 13, 2024, and paid him the remaining $700 installment. Mr. Generoso invited the undercover agent into his home. In the basement, Mr. Generoso showed the undercover agent identifying documents in the names of various people. PSR 24

3

On September 9, 2024, the undercover agent asked Mr. Generoso if they could use the Brazilian passport as identification to obtain a driver's license, to which he replied, "yes". PSR 25

In November 2024, law enforcement obtained and executed a search warrant at Mr. Generoso's home in Danbury, Connecticut. Inside the home, agents found a variety of documents tying Mr. Generoso to the license fraud conspiracy, including driver's licenses and permits, as well as fake driver's education certificates of completion.  Altogether, agents seized 46 licenses and permits. PSR 27

## **Personal and Family Background[3]**

<u>Mr. Generoso's life after coming to the U.S. in 2016</u>

Mr. Generoso came to the United States in 2016 and remained in Norwood, MA for four years before moving to his current residence in Connecticut in 2020. Mr. Generoso currently lives at 180 Osborne Street, Danbury, CT with his common-law wife, Gisa Dias and her 13-year-old daughter. PSR 66 The couple has been together for five years and met in Brazil.  His wife is in the process of applying for and securing immigration documentation. His wife has another daughter, age 24, who does not reside with her.  The couple shares a close relationship, and the 13-year-old daughter defendant shares a good relationship with his Mr. Generoso. PSR 63

Mr. Generoso has a biological daughter, Hellen Costa Gomes (age 18) from a prior relationship with Josiane Gomes Dasilva. The former couple was together for fourteen years. Mr. Generoso's biological daughter lives in Brazil and is healthy and well. She recently visited Mr. Generoso from December 2024 to February 2025, and they share a very close relationship. PSR 64

---

[3] Most of Mr. Generoso's background in this section is repeated <u>verbatim</u> from the PSR dated 9/11/2025.  For purposes of this memorandum, the background of Mr. Generoso is at times summarized in this section.

U.S. Probation confirmed Mr. Generoso's background with his common-law wife.  His wife described Mr. Generoso to U.S. Probation as:

> "An attentive, responsible, and dedicated husband. She noted that he treats and cares for her daughter as if she were his own, and provides her with guidance, emotional support, and is a constant presence in her life. She further noted that he is caring, affectionate, and supportive to his own daughter despite the distance given her residence in Brazil. Gisa acknowledged that the defendant made a mistake but that he is nonetheless a good-hearted person who cares about everyone around him. She stated that he is determined to learn from his experience and move forward positively as a strong example for his family." PSR 66

Employment Record

January 2025-Present: Mr. Generoso has worked for G&F Service Cleaners where he cleans vehicles. He earns $20 per hour. This employment has been verified by the District of Connecticut. In 2022 – 2024, Mr. Generoso was self-employed by providing transportation and performing car washes and detailing. He was paid in cash and earned up to $5,000 per month. From 2020-2022: Mr. Generoso worked in the construction industry with his cousins.  From 2019-2020: Mr. Generoso worked for Santos Insulation in Raynham, MA. This company was owned by the nephew of his former employer. From 2016-2019: Mr. Gereroso was employed by Green Tiger Insulation as an insulation installer. Prior to coming to the U.S., Mr. Generoso worked for various construction companies, primarily specializing in brick laying and plaster work and worked in Information Technology, performing network maintenance, formatting, and computer repairs. PSR 76-81

Mr. Generoso's life before coming to the U.S. in 2016

Mr. Generoso was born in Governador Valadares, Minas Gerais, Brazil to the marital union of Lourdes Costa Generoso and Geraldo Alves Generoso. The defendant was raised by both parents alongside his two siblings. PSR 56

Mr. Generoso described his childhood in Brazil as normal without any significant adversity. The defendant was raised in a pleasant suburban area, attended church, was involved in sports, and went to

school. His family was lower class, but he never lacked basic necessities. The defendant described his parents as loving and nurturing and denied witnessing or being victim of any form of abuse. There was no substance use in the home. PSR 57

The defendant remained in Brazil until age 17, at which point the family moved to Spain for a better life. The defendant remained in Spain for ten years before the family returned to Brazil in 2008. The defendant remained in Brazil for approximately four years before returning to Spain in approximately 2012. The defendant reported that he entered the United States in 2016 on a tourist visa. Mr. Generoso's tourist visa has since expired, and he is now considered to be illegally in the United States per Immigration and Customs Enforcement (ICE). PSR 58

Mr. Gereroso's mother lives in Brazil with his father. Mr. Generoso also has a brother and a sister who also reside in Brazil. PSR 59

## SENTENCE RECOMMENDATION - SUMMARY

Weighing the nature and conduct in the alleged offense, the significant collateral consequences he may face as a result of his conviction (possible removal and deportation) and his lack of any criminal history, **a sentence of time-served followed by a period of supervised release** serves the overall purposes of sentencing as articulated set forth in 18 U.S.C. §3553. In the alternative, Mr. Generoso submits a sentence of house arrest followed by a period of supervised release is a sentence sufficient but not greater than necessary to achieve the goals of sentencing pursuant to 18 U.S.C. 3553(a) and would serve the interests of justice. See _Gall v. United States_, 552 U.S. 38, 51(2007) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.") (internal citations omitted).

## PROCEDURAL BACKGROUND AND CUSTODIAL HISTORY

6

On December 10, 2024, Mr. Generoso was arrested pursuant to the authority of an arrest warrant which was issued based on the instant indictment.  Mr. Generoso was subsequently detained in federal custody through December 16, 2024.  On December 16, 2024, Mr. Generoso was released on unsecured bond and pretrial conditions and has resided at his family home at 180 Osborne Street, Danbury, CT.

On June 24, 2025, Mr. Generoso pled guilty to two counts of a four-count Indictment. Count 1 charged Conspiracy to Unlawfully Produce and Possess with Intent to Transfer Identification Documents, in violation of 18 U.S.C. § 371 and Count 4 charged Furnishing a False Passport to Another for Use, in violation of 18 U.S.C. § 1543. There is no plea agreement in this case. According to Probation and Pretrial Services' records from the District of Connecticut (who has been supervising Mr. Generoso's pre-trial release) Mr. Generoso has complied with all Court-ordered conditions of release.

## ARGUMENT

Mr. Generoso submits that the requested sentence is appropriate and consistent with the purposes of 18 U.S.C. §3553(a)(2) for the reasons set forth.  First and foremost, Mr. Generoso urges the court to depart downward from the guideline range of 10 - 16 months.  Mr. Generoso is 40 years old and has no criminal history.  He pled guilty to the instant indictment in short order and has accepted responsibility for his actions.  The conspiracy at issue, although clearly unlawful, involved procuring drivers for persons who otherwise couldn't obtain them because of their undocumented status.  The government has not alleged that those licenses were used to facilitate more serious crimes such as terrorism or major financial fraud, rather it appears those licenses were used to merely allow undocumented persons to operate a motor vehicle, presumably to support themselves.  This distinction is important, when viewed in the light of much more egregious § 1028 violations.

Mr. Generoso's role in the instant conspiracy was of a limited nature and the government has acknowledged that Mr. Generoso was not the main culprit in this conspiracy.  Mr. Generoso was not an organizer, leader or supervisor of this scheme.   Rather, his role in this offense, as set forth by the

government, was essentially "a runner" for the organization.  He met individuals who wanted driver's licenses and gave them the false documents those individuals needed to obtain those licenses. There is no evidence Mr. Generoso earned any significant income from his illegal activities.  Mr. Generoso's guilty plea to these two felonies has already changed his life significantly.  As a result of his guilty plea his illegal status is now known to ICE/Department of Homeland Security, and he now faces the possibility of arrest by ICE and deportation/removal to Brazil.  Next, he contends that careful consideration of the §3553(a) factors favor the requested sentence.

## I.      ADVISORY GUIDELINE RANGE AND GROUNDS FOR DEPARTURE

The Presentence Report accurately calculates that the guideline range for Mr. Generoso is 10 – 16 months.  This is based upon a total offense level of 12 and a criminal history category of I.[4]  PSR 85

## II.     IN DETERMINING THE APPROPRIATE SENTENCE, THE COURT MUST CONSIDER THE FACTORS SET FORTH IN 18 U.S.C. § 3553, WHICH COMPEL THE CONCLUSION THAT THE MECHANICALLY CALCULATED GUIDELINE RANGE IS OVERLY PUNITIVE AND SUPPORT A SENTENCE BELOW THAT RANGE

In crafting an appropriate sentence, the Court must also consider the relevant § 3553(a) factors. One of those factors is the guideline range. But, unlike the sentencing practice of years ago, that one factor is no longer the be all and end all of the discussion. The Supreme Court has firmly instructed that sentencing courts "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007) (citing *Rita v. United States*, 127 S. Ct. 2456 (2007)). Rather, a sentencing court must make an "individualized assessment based on the facts presented." *Id*.  Above all, a court's final determination of a sentence must reflect "§ 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in 3553(a)(2)" namely, retribution, deterrence, incapacitation, and rehabilitation. See *Kimbrough v. United States*, 128

---

[4] Since the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment. USSG §5C1.1(d). PSR 85

U.S. 558, 575 (2007).[5]

### a. Mr. Generoso's History and Characteristics and the Circumstances of this Offense Render the Requested Sentence Sufficient and Appropriate Under §3553(a)(1)

The court must first weigh the nature and circumstances of the offense and the history and characteristics of the defendant, pursuant to Pursuant to §3553(a)(1). Considering both (as described in this memorandum), Mr. Generoso submits a sentence of time-served is appropriate. Given that Mr. Generoso was arrested on December 10, 2024, and held in custody through December 16, 2024, Mr. Generoso requests this Court sentence him to 7 days to serve, deemed served. Given the low-end of the guidelines range is 10 months, he submits the recommended sentence is reasonable.

Second, Mr. Generoso, being in the United States without authority and having been convicted of two felonies in the Federal Court faces a strong likelihood of ICE custody and deportation to Brazil. Mr. Generoso submits a sentence of time served, supervised release (possibly with a term of house arrest) along with his possible deportation, which will be sufficient punishment for his offense.

Although clearly in violation of Federal Law, arguably, he violated the law to earn some additional money to support his family in the United States and his daughter in Brazil. Thus, even with a sentence of time-served, he will be paying a very high price for trying to support his family with a "living wage". Mr. Generoso would submit he came to the U.S. and then remained in the U.S. with the objective of earning enough money to support his family and to enjoy a "better life" than he had in Brazil.

If Mr. Generoso is arrested and detained in ICE custody he may likely remain in ICE custody for a

---

[5] In so doing the court must consider:

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed--

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. §3553(a). Additionally, under 18 U.S.C. §3553(a)(6) the Court should also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who ha[ve] been found guilty of similar conduct."

period of time, possibly another 3 to 9 months, awaiting deportation.[6]  Thus, even if this Court were to sentence him to time served, a downward departure from the guidelines, considering the possible additional time he may spend in ICE custody, his total imprisonment will likely be closer to the low-end of guidelines range of 10 months.

When Mr. Generoso came to the United States in 2016 (at approximately 32 years old) he left behind his entire family: his mother, his father, a brother, a sister and a biological daughter who all resided in Brazil.  PSR 59  He was hopeful about his prospects of securing a better financial future for himself and them.  During his time in the U.S., he surely became aware of how difficult it is to find and hold a job without lawful status.  Mr. Generoso most certainly bears responsibility for the choice he made; however, it is important to acknowledge that arguably, it was against this backdrop of circumscribed opportunities and living in the shadows that the instant offense occurred.  It is also important to acknowledge that, in order to fashion a meaningful sentence for Mr. Generoso, the circumstances of his misstep must be considered in conjunction with the gravity of his possible deportation.

In light of these circumstances, his lack of any criminal history, extended incarceration of Mr. Generoso, would serve no meaningful purpose.

### b. The Requested Sentence is Sufficient to Meet the § 3553(a)(2) Purposes of Punishment in This Case

Considering Mr. Generoso's acceptance of responsibility, his background and the severe collateral consequences he may face as a result of his conviction, a sentence of time served is "sufficient but no greater than necessary" to meet the § 3553(a)(2) punishment goals of protection of the public, incapacitation, deterrence, just punishment, and treatment.

*i.    The Requested Sentence is Sufficient to Provide Just Punishment (§ 3553(a)(2)(A))*

When considering what is "just punishment" it is important not just to consider the obvious and

---

[6] The exact length of that he could be held in ICE custody is unknown, but it can be assumed there will be a time period between going into ICE custody and actual deportation.

immediate implications of the incarcerative sentence imposed, but to also consider the broader implications of the sentence. Those who have been convicted and incarcerated face numerous penalties beyond those imposed in the courtroom, including employment discrimination, occupational restrictions, exclusions from public housing, loss of welfare or food stamps, ineligibility for student loans, exposure to disease, disintegration of family ties, financial loss, and barriers to reentry. One court has commented on the penalties often overlooked when considering what is "just punishment:"

> [T]here is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties and burdens always attend criminal conviction, to name a few: losses of family life, of socioeconomic status, of employment and career opportunities; diminution of civil rights and entitlements; and countless humiliations and indignities commonly associated with living in confinement. In essence, the court's discretion to depart is a manifestation of the necessity for a just sentencing scheme to include provisions for that reasoned intuitive judgment, rather than a hard, deterministic formula, to govern the rare case. .............................. The concept of what is "just punishment" thus contemplates a prospective, empirical assessment, necessarily imprecise, of the accumulation of reasonably foreseeable, ordinary hardships and suffering that any given offender is likely to experience in the typical case during the course of a particular range of imprisonment.") (citations omitted).

*United States v. Mateo*, 299 F.Supp.2d 201, 209-210 (S.D. N.Y. 2004).

Facing possible removal, this collateral consequence of his crime will leave lasting effects upon him. As the Supreme Court has observed:

> "[I]mmigration reforms over time have expanded the class of deportable offenses and limited the authority of judges to alleviate the harsh consequences of deportation. The drastic measure of deportation or removal is now virtually inevitable for a vast number of noncitizens convicted of crimes....... These changes to our immigration law have dramatically raised the stakes of a non-citizen's criminal conviction.......[and] confirm our view that, as a matter of federal law, deportation is an integral part – indeed, sometimes the most important part of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes. (internal punctuation and citation omitted)

*Padilla v. Kentucky*, 130 S. Ct. 1473, 1481-82 (2010).

A longer sentence in light of this fact, "may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the

real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54.

> ii. *The Requested Sentence Will Afford Adequate Deterrence to Future Criminal Conduct and Protect the Public pursuant to §§ 3553(a)(2)(B) and 3553(a)(2)(C)*

The requested sentence adequately serves the general and specific deterrence goals of sentencing policy. Research consistently indicates that although the **certainty** of being caught and punished does have a deterrent effect, "increases in **severity** of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*; see also, Steven N. Durlauf & Daniel S. Nagin, *Imprisonment and Crime: Can Both be Reduced?*, 10 Criminology & Pub. Pol'y, 37 (2011)[7] ("The key empirical conclusions of our literature review are that at prevailing levels of certainty and severity, relatively little reliable evidence of variation in the severity of punishment having a substantial deterrent effect is available and that relatively strong evidence indicates that variation in the certainty of punishment has a large deterrent effect, particularly from the vantage point of specific programs that alter the use of police."); Raymond Pasternoster, *How Much Do We Really Know About Criminal Deterrence*, 100 J. Crim. L. & Criminology 765, 818 (2010) (There is "no real evidence of a deterrent effect for severity." "[I]n virtually every deterrence study to date, the perceived certainty of punishment was more important than the perceived severity." *Id.* at 817.)

In addition, the requested sentence is sufficient, considerably more than sufficient, in fact – to deter future criminal behavior by Mr. Generoso and thus meets the specific deterrence goals of sentencing. There are numerous and compelling reasons to believe that Mr. Generoso presents a low risk of recidivism. He has been employed throughout his adult life, has a long-term partner, and has no history of drug or alcohol abuse. According to the United States Sentencing Commission's own research, these characteristics make him significantly less likely to re-offend. *See* U.S. Sent'g Comm'n, *Measuring*

---

[7] Available at http://onlinelibrary.wiley.com/doi/10.1111/j.1745-9133.2010.00680.x/pdf.

*Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at Ex. 9, at 28; Ex.10, at 29 (May 2004).

With respect to specific deterrence, Mr. Generoso for almost all of his adult life, has been a law-abiding resident.[8] Additionally, along lines similar to those argued with respect to general deterrence, there is significant research to suggest that while certainty of punishment provides a specific deterrent effect, long prison sentences are not an effective method for combating recidivism. In some circumstances – particularly among low-risk offenders like Mr. Generoso – a longer sentence can have the perverse consequence of *increasing* the likelihood of re-offense, by undercutting the defendant's social connections to family, community, and employers. *See* Valerie Wright, Sentencing Project, *Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment* 7 (2010) ("Among low-risk offenders, those who spent less time in prison were 4% less likely to recidivate than low-risk offenders who served longer sentences. Thus, when prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism.")[9]; *see also* Roger Warren, National Center for State Courts, *Evidence-Based Practice to Reduce Recidivism: Implications for State Judiciaries* (2007)("The research evidence is unequivocal that incarceration does not reduce offender recidivism. . . Incarceration actually results in slightly increased rates of offender recidivism.")[10].

iii. *The Requested Sentence is Consistent With the Need to Avoid Unwanted Sentencing Disparities, consistent with §3553(a)(6)*

Pursuant to 18 U.S.C. § 3553 (a)(6), the court must consider the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar

---

[8] With the exception of the instant conviction.
[9] Available at http://www.sentencingproject.org/ doc/Deterrence%20Briefing%20.pdf.

13

conduct when imposing a sentence.

The four (4) Codefendants cases

Edvan Fernando Alves De Andrade:  Charged by indictment with the same crimes as Mr. Generoso: Conspiracy to Unlawfully Produce and Possess with Intent to Transfer Identification Documents, in violation of 18 U.S.C. § 371 and Furnishing a False Passport to Another for Use, in violation of 18 U.S.C. § 1543. From the docket, based on the last entry of 12/10/24, it appears this defendant has not been apprehended.

Gabriel Nascimento De Andrade: Charged by indictment with Conspiracy to Unlawfully Produce and Possess with Intent to Transfer Identification Documents, in violation of 18 U.S.C. § 371. As of 7/11/25, from the docket, it appears this codefendant has fled the United States and voluntarily absented himself from the jurisdiction.

Leonel Texeira De Souza Junior:  Charged by indictment with Conspiracy to Unlawfully Produce and Possess with Intent to Transfer Identification Documents, in violation of 18 U.S.C. § 371.  From the docket, based on the last entry of 12/10/24, it appears this defendant has not been apprehended.

Cesar Agusto Martin Reis:  Charged by indictment with the same crimes as Mr. Generoso: Conspiracy to Unlawfully Produce and Possess with Intent to Transfer Identification Documents, in violation of 18 U.S.C. § 371 and Furnishing a False Passport to Another for Use, in violation of 18 U.S.C. § 1543. This codefendant pled guilty on 6/13/25 and is scheduled for sentencing 9/26/25.

**Judiciary Sentencing Information (JSIN)**

The Data from the USSC/Judicial Sentencing Information is also a good source for the court to consider avoiding unwanted sentence disparities among defendants with similar records who have been

found guilty of similar conduct when imposing a sentence. According to data from the JSIN, there were 30 defendants whose primary guideline was §2L2.1, with a Final Offense Level of 12 and a Criminal History Category of I.  Of those 30 defendants, 21(70%) received a sentence of imprisonment so it follows that 9 defendants (30%) were not sentenced to prison.  Of the 70% who received a sentence of imprisonment, the average length of imprisonment imposed was 9 month(s) and the median length of imprisonment imposed was 10 month(s).  For all 30 defendants in the cell, the average sentence imposed was 8 month(s) and the median sentence imposed was 8 month(s). PSR 102

Mr. Generoso submits given his background he should be among the 30% of people who are not sentenced to prison for committing similar offenses.  Given the average and median sentences imposed, and taking into account additional incarcerated time Mr. Generoso may have to serve in ICE custody, Mr. Generoso submits a sentence of time served is not a significant downward departure from the low-end of the guidelines.

**CONCLUSION**

For the foregoing reasons Mr. Generoso respectfully requests that this Court sentence him to time-served which is 7 days, followed by a period of supervised release, as this sentence is sufficient but no longer than necessary to serve the statutory purposes of punishment as articulated in 18 U.S.C. §3553.

Respectfully Submitted:

HELBERT COSTA GENEROSO,
By his attorney:

*/s/ Blake J. Rubin*
Blake J. Rubin, Esquire
120 Main Street
Worcester, MA 01608
(BBO # 630777)
(T) 508.925.0005
Blake.rubin.law@gmail.com

Date:  9/25/25

## DEFENDANT'S CERTIFICATE OF SERVICE ON MEMORANDUM

I, Blake J. Rubin, attorney for the defendant, hereby certify that the above document was filed through the ECF system and will be sent electronically to all parties of record.

*/s/ Blake J. Rubin*
Blake J. Rubin, Esquire

Date:  9/25/25

16